# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 09-2812

_____

Peter B. Dunning, for himself and as    *
representative and attorney-in-fact for    *
his grandchildren; David B. Dunning;    *
Claire Baker; Rachael Baker; Timothy    *
Baker; Meghan E. Dunning; Charles B.    *
Dunning; Bailey W. Dunning; Corey    *
Steven Sheehan; Hazel R. Dunning,    *
                       *    Appeal from the United States
      Plaintiffs - Appellants,    *    District Court for the
                       *    Southern District of Iowa.
    v.                   *
                       *    [UNPUBLISHED]
Gregory J. Bush; Lawrence P. Bush;    *
Joseph D. Bush; Barbara S. Johnson;    *
Thomas M. Bush; Peter A. Bush; Mary    *
P. Walsh; Francis P. McCarthy,    *
                       *
      Defendants - Appellees.    *

_____

Submitted: April 15, 2010
Filed: September 21, 2010

_____

Before LOKEN, BRIGHT, and MELLOY, Circuit Judges.

_____

PER CURIAM.

This case is before us on appeal for the second time. Peter Dunning and various family members ("Dunning") sold their interests in Twin City Mineral Corporation ("Twin City") to the remaining owners: Bush, McCarthy, and others ("the defendants"). After the sale, Dunning sued the defendants, asserting seven causes of action. The district court[1] granted summary judgment of dismissal in favor of the defendants on all counts. Dunning appealed to this court. This court affirmed the dismissal of two of the claims, reversed the remaining claims, and remanded for further proceedings. *Dunning v. Bush*, 536 F.3d 879 (8th Cir. 2008).

On remand, the district court held a five-day bench trial and ruled in favor of the defendants on all counts. Dunning again appeals, arguing the district court erred in ruling in favor of the defendants on the: (1) fiduciary duty claim; (2) insider-trading claim; (3) first breach of contract claim; and (4) second breach of contract claim. We reject his arguments and affirm the judgment of the district court.

I

We have previously relayed the extensive facts of this case, *see Dunning*, 536 F.3d at 881-85, and decline to do so again here. Suffice it to say that Dunning and the defendants each owned a 50% interest in Twin City. Twin City's only asset was a 50% ownership interest in Superior Minerals ("Superior"), a limited liability company. Aggregate Industries North Central Region, a subsidiary of Aggregate Industries (collectively referred to as "Aggregate") owned the remaining 50% interest in Superior.

In early 2003, Dunning desired to sell his interest in Twin City to the defendants. The parties entered into a Stock Purchase Agreement ("SPA") under which Dunning would receive a lump sum payment and a share of the company's profits over the next ten years. The SPA also included a revaluation provision,

---

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

Section 1.4, which provided that the stock would be revalued if Aggregate sold its 50% interest in Superior to the defendants.

After the defendants purchased Dunning's interest in Twin City, the defendants purchased Aggregate's interest in Superior and informed Dunning that this purchase triggered a revaluation of Dunning's purchase price per share under Section 1.4 of the SPA. The revaluation resulted in a decrease in the value of Dunning's shares, and Dunning sued the defendants.

## II

Dunning claims that the district court erred in ruling in favor of the defendants on his fiduciary duty claim.

## A.

Dunning first contends that the defendants breached their fiduciary duty toward him by failing to disclose material facts about (1) the economic stability and likelihood of the financing of Superior at the time the parties entered into the SPA; and (2) the defendants' buy-out of Aggregate's interest in Superior.

The district court agreed with Dunning that the defendants owed him a fiduciary duty, but it determined that Dunning's complaints of non-disclosed information were not material. The court credited McCarthy's testimony that he did not believe Aggregate would stop funding Superior because Aggregate had a history of not abandoning its partners during difficult financial times. The court also deemed immaterial the fact that the defendants were seeking alternate funding for Superior at the time they entered into the SPA because Superior was unable to secure favorable financing until after the parties signed the SPA. The court specifically analyzed each of Dunning's claims that the defendants failed to disclose material facts about Superior's economic stability and it did not err on this issue.

-3-

The district court also rejected Dunning's claim that the defendants should have disclosed the material fact that the regional president of Aggregate asked the defendants if they would be interested in buying out Aggregate's share in Superior. The district court determined this did not constitute a material fact because (a) the discussion between the regional president and the defendants amounted to only an informal discussion, (b) the regional president did not have authority to sell Aggregate's interest in Superior, and (c) the regional president only asked the defendants to "gauge the defendants' reactions." The court further found that Aggregate had not made a decision to sell its interest in Superior before September 10, 2003, after the defendants and Dunning had entered into the SPA. Finally, the court reasoned that Dunning was aware of the fact that the defendants might buy out Aggregate and specifically included a provision in the SPA dictating how a buy-out would affect Dunning's pay-out. The district court's findings are not clearly erroneous and the court correctly decided that the "tentative, speculative discussions" between the defendants and Aggregate were not material. *See Berreman v. West Publ'g Co.*, 615 N.W.2d 362, 372 (Minn. Ct. App. 2000).

B.

Dunning next contends that the district court erred in determining that he was not damaged by the defendants' failure to disclose that Superior was negotiating a resolution of a failed joint venture agreement between Lehigh Cement Company ("Lehigh") and Superior. The district court determined that the defendants knew about the status of the negotiations before Dunning signed the SPA, that this information was material, and that the defendants should have disclosed it to Dunning. But the court decided that Dunning presented no credible evidence that he was damaged by this nondisclosure. The court did not find credible Dunning's testimony that he would not have signed the SPA if he had known about the negotiations. The court relied on testimony that Dunning was driven to exit the business and determined that Dunning would have sold the stock despite the pending resolution with Lehigh. The district court is in the best position to weigh Dunning's credibility and we will not

second-guess that determination. *See United States v. Coney*, 456 F.3d 850, 860 (8th Cir. 2006).

Accordingly, we affirm the district court's ruling in favor of the defendants on Dunning's fiduciary duty claim.

## III

Dunning argues the district court erred in ruling in favor of the defendants on the insider-trading claims. Dunning's arguments on this claim are very similar to his arguments on the fiduciary duty claim, which we have already rejected.

## IV

Dunning argues the district court erred in ruling in favor of the defendants on his first breach of contract claim. Specifically, Dunning contends that the district court erred in finding that Section 1.4 of the SPA applied to Superior's redemption of Aggregate's stock. Section 1.4 of the SPA states, in pertinent part:

> 1.4 *Purchase of Aggregate Industries Shares*. In the event, . . . Buyers or a related or affiliated entity, purchase substantially all of the shares in Superior owned by Aggregate Industries or an affiliate of Aggregate Industries, the purchase price per share hereunder shall be recalculated in a manner similar to the method set forth in Section 1.3 hereunder. . . .

In the first appeal, we determined Section 1.4 was ambiguous because it did not specify whether (1) a redemption of stock is covered by 1.4; and (2) Superior had become a related or affiliated entity of the defendants. *See Dunning*, 536 F.3d at 889. We remanded to the district court to allow the parties to present extrinsic evidence as to the intent and reach of Section 1.4. *Id.*

On remand, the district court held that the buy-out triggered Section 1.4 for several reasons. First, the first paragraph of the SPA defined buyers as the defendants in this case "or any entity owned by Buyers." The district court reasoned that the

defendants owned 100% of Twin City, and Twin City owned 50% of Superior. The court rejected Dunning's argument that Superior was not a related or affiliated entity of the redeeming party (Superior) because Twin City only owned fifty percent of Superior before the transaction. The district court found no support in the contract for Dunning's argument that the contract required complete or majority ownership of another entity to be considered "related" or "affiliated."

Following this court's mandate, the district court also considered extrinsic evidence to clarify the intent and reach of Section 1.4. The district court found persuasive a memo from Dunning's attorney, drafted while the parties were negotiating the SPA, which provided that if the defendants resold shares or if there was an "asset sale, stock sale or transfer of control for Twin City and/or Superior[,] . . . then . . . a purchase price adjustment will be made[.]" Dunning's attorney's memo specifically stated that a price adjustment would be made if the defendants purchased Aggregate's interest in Superior. The court also determined that Dunning's attorney's memo clarified that Dunning intended that any change of control over Superior would trigger the revaluation provision in Section 1.4. The extrinsic evidence, along with the plain language of the SPA, supports the court's conclusion that the defendants' buy-out of Aggregate's interest in Superior triggered Section 1.4. Therefore, reviewing the district court's interpretation of the contract de novo and its factual findings for clear error, *see Rambo Assocs., Inc. v. South Tama Cnty. Cmty. Sch. Dist.*, 487 F.3d 1178, 1184 (8th Cir. 2007), we conclude the district court did not err in ruling in favor of the defendants on Dunning's first contract claim.

V

Dunning argues the district court erred in ruling for the defendants on his second contract claim because the defendants erroneously calculated the value of his shares.

As previously explained, after the defendants and Dunning entered into the SPA, Superior negotiated a resolution of the failed joint venture agreement with Lehigh. As a result of that negotiation, Lehigh provided Superior with 5,500 tons of cement per year for five years. The defendants and Aggregate placed a value of approximately $1.58 million on the cement supply agreement.

Dunning disagreed with that valuation. Dunning's expert witness, William Allen, valued the cement supply agreement at $2.3 million. Allen testified that the cement was worth approximately $85 per ton in the first year, and he increased that price six percent for each of the subsequent years of the contract.

The district court rejected Dunning's value of the cement supply agreement. The court found:

> Mr. Allen is not and has not been familiar with the price of cement in the midwestern part of the United States. He has never valued a contract like this one. He did nothing to determine the actual price for cement in the relevant market in any of the years included within his opinion. Plaintiffs' earlier expert was fired by Peter Dunning for using a substantially lower figure for the market value of cement because Dunning believed the earlier expert's number to be too high. Mr. Dunning should have superior knowledge to that of Mr. Allen as to the price of cement in the Midwest. Mr. Dunning's opinion was that the annual increase in the price of cement should only have been escalated by less than three percent per year. Further evidence that the cement contract was not overvalued came from Mr. McCarthy who had offered the contract to a related company who chose not to take it for $1.58 million. Aggregate Industries was in a good position to value this cement in an arm's length transaction. Plaintiffs have not proved that it was improperly valued at $1.58 million.

The court deemed Allen's valuation not credible. The court determined that his valuation method was "highly flawed" and that Allen arbitrarily increased the value of the cement by six percent. The district court's findings are based upon the

-7-

credibility of Allen's testimony, which we do not reweigh on appeal. *See Surgidev Corp. v. Eye Tech., Inc.*, 828 F.2d 452, 456 (8th Cir. 1987) (holding that factual findings underpinning a credibility determination are virtually never clear error). After carefully reviewing the record, we find no clear error in the district court's findings. *See Black Hills Corp. v. Comm'r of Internal Revenue*, 73 F.3d 799, 804 (8th Cir. 1996).

## VI

We have considered Dunning's remaining claims and conclude they are without merit. We affirm the judgment of the district court.

_____